A. P. JOHNSON AND NANNIE J. JOHNSON v.
JOHN W. JONES, *Sheriff.*

### No. 627.

1. CREDITORS—*in absence of proof, are considered subsequent to fraudulent transaction.* Where the record fails to show whether or not the debts due the execution creditors were contracted before or after the date of an alleged fraudulent transfer by the debtor to his wife of his property, *held*, that such creditors should be regarded as subsequent creditors with reference to such transfer.

2. BILL OF SALE—*not in record, presumed not entitled to record in register of deeds' office.* Where the record does not contain the bill of sale by which the debtor transferred the property in controversy to his wife, although it was read in evidence at the trial, and where it appears that such bill of sale had been recorded, *held*, that it will be presumed not to have been such an instrument as imparted constructive notice by reason of its being recorded.

3. FRAUD—*properly submitted to jury.* Where the debtor was a joint partner with another in a grocery firm the debts of which averaged an amount practically equal to its stock of goods, and where he transferred to his wife all his property, which was worth several thousand dollars, except his interest in the firm, and the evidence was conflicting as to his good faith toward future creditors of the firm in making such transfer and as to the consideration therefor, *held*, that the court properly submitted these questions to the jury, and that their verdict in favor of the execution creditors, when approved by the trial court, will not be disturbed by the Appellate Court.

4. PARTNERSHIP — *existence of, properly submitted to jury.* Whether or not the debtor was a partner with another in the ownership of the property in controversy, being a question of fact, and the evidence as to the same being conflicting, *held*, that the verdict of the jury, after being approved by the trial court, is conclusive in this court as to the existence of the alleged partnership.

Error from Reno District Court. Hon. L. Houk, Judge. Opinion filed November 16, 1897. *Affirmed.*

*F. F. Prigg* and *C. M. Williams*, for plaintiffs in error.

*John W. Roberts* and *Whiteside & Gleason*, for defendant in error.

756      JOHNSON v. JONES.

S. Dept.      Opinion.   Milton, J.      6 Kan. App

MILTON, J. On the twenty-fourth day of November, 1890, J. W. Jones, as Sheriff of Reno County, levied three executions — one in favor of the Hutchinson Mill Company against Adaline B. Constant and others, for $539; one in favor of Long Brothers against Constant & Johnson, for $374; and one in favor of Julius Kuhn against Constant & Johnson, for $677—upon the undivided half interest in 13 head of hogs, 36 head of fat steers, from three to five years old, and 48 head of steers, one and one-half years old, and other property, as the property of C. P. Johnson, one of the execution debtors.

Afterwards, on the twenty-eighth day of November, 1890, A. P. Johnson and Nannie J. Johnson, plaintiffs in error, commenced replevin proceedings in the District Court and replevied the thirteen head of hogs and eighty-four head of cattle, claiming to be the owners of said property. To this action in replevin the defendant filed a general denial, and also a disclaimer, disclaiming any interest or any claim whatever in or to or against the undivided half interest of said property, admitting that it was owned by A. P. Johnson, and claiming only the half interest levied upon as the property of C. P. Johnson.

The action was tried on the twenty-fourth day of October, 1891, to a jury, resulting in a verdict and judgment for defendant and a finding that C. P. Jonhson's interest in the property was eight hundred dollars. Afterward, and within proper time, a motion for a new trial was filed by the plaintiffs. The court overruled this motion and entered judgment in favor of defendant upon the verdict. Plaintiffs below bring the case here for review.

The record does not contain all the evidence, as it

appears that a bill of sale, showing a transfer of a half interest in the property in controversy from C. P. Johnson to his wife, Nannie J. Johnson, which was offered and read to the jury, is not found in the case-made.   This bill of sale was dated April 1, 1889, and was recorded on April 3, 1889.  It is several times referred to by the witnesses and in the instructions of the court.  It appears that, at the time Johnson made this bill of sale, he conveyed by deeds to his wife all his real property, and that the deeds were immediately placed of record.   By the bill of sale and these deeds, he transferred all his property except an undivided half interest in a grocery store which he owned in partnership with Hiram Constant.  The total value of the property transferred was from six thousand to ten thousand dollars.

The real issues in the case are these : Were the execution creditors subsequent creditors with reference to the transfer by Johnson of his property to his wife? Was this transfer void as to the execution creditors? Were A. P. and C. P. Johnson partners, and as such the owners of the property in controversy at the time the levy was made?

The instructions of the court cover the law both as to existing and subsequent creditors.   The only explanation of this fact which we have been able to discover from the record is, that

1. Subsequent creditors.

it does not disclose the date when the debts due the execution creditors were contracted.   There is not a line or word of positive testimony on this point.   We think it was incumbent on the defendant, who represented the judgment creditors, to prove when the debts in question were contracted, and that by reason of his failure to do so the execution creditors must be regarded as subsequent creditors with respect to the

transfer by Johnson of his interest in the property in controversy. An examination of the evidence leads us to conclude that the jury was warranted in considering the transfer in question and the conveyances of the real property to have been voluntary conveyances. No convincing testimony as to the consideration therefor appears, and the jury must have been influenced by this fact. Considering this transfer as a voluntary conveyance, the important question arises, Did C. P. Johnson, at the time of such transfer, have in view the creation of the indebtedness to the execution creditors? He was engaged with Constant in the grocery business at Hutchinson, and they had conducted the business less than a year at the date of the transfer in question. They carried a stock averaging probably fifteen hundred dollars in value, and owned accounts amounting to about twelve hundred dollars, nominally. They were indebted to various wholesale merchants in an aggregate amount of from fifteen hundred to eighteen hundred dollars. Johnson testified that he understood and believed Constant to be a man of considerable means. We are not advised as to the date when the firm quit business, but we learn from the execution that the judgments were obtained against Johnson and Mrs. Constant, as administrator of her deceased husband's estate, in the months of September and October, 1890.

But for two facts, the contention of counsel for plaintiffs in error that the transfer from Johnson to his wife became effectual as against the execution creditors and could not be disturbed by them, would be regarded as sound and controlling. One of these facts is that the bill of sale is not preserved in the record; and we cannot presume as against the judgment of the trial court that it

2. Bill of sale not considered.

was such an instrument as, when recorded, imparted· constructive notice to subsequent creditors. The other fact is, that there was positive testimony on behalf of the defendant from which the jury might have inferred an intention on the part of Johnson to protect himself, so far as his property outside of the grocery business was concerned, against liabilities accruing therefrom. A. K. Burrell testified for the defendant, in regard to a conversation with C. P. Johnson, as follows:

*3. Fraud.*

"Ques. I'll ask you whether or not you had any conversation with C. P. Johnson, along in the spring of '89, in regard to the business of Constant & Johnson? Ans. Yes, I did have at different times.

"Q. I'll ask you whether or not you had any conversation with regard to the transfer of property to his wife, that's been mentioned here? A. Yes, I did have.·

"Q. You may state as nearly as you can, if you remember, when the conversation was. A. Well, they had the conversation some time in the fore part of May, 1889.

"Q. I'll ask you what was said there to you by Mr. Johnson in regard to this transfer we were talking about, the condition of the store, and his business and Constant's? A. I remarked to him that it seemed to be reckless the way Constant was doing. I told him I didn't believe Constant was worth a dollar. He said to me that he was 'fixed'; that he had made a transfer of his property to his wife — everything — and asked me if that transfer would be good. I told him a transfer from husband to wife was good.if he did not owe anybody anything; if he did owe, it was not.

"Q. When you told him you thought the business was n't safe there, he told you he was fixed? A. That's right."

CROSS-EXAMINATION.

"Q. Did he say anything to you of the indebtedness of the firm at that time? A. Well, that was the subject of the conversation.

"Q. What was said, if anything, as to how much the firm was in debt? A. The amount was not named."

In the case of *Sheppard v. Thomas* (24 Kan. 783), which is relied on by counsel for plaintiffs in error as supporting their position, the Supreme Court said :

"It seems to us more in accordance with reason to hold that a voluntary conveyance made to defraud creditors is void only as to prior and existing creditors, and to those designed to be defrauded by the conveyance. For instance, if a debtor dispose of his property with intent to defraud those to whom he expects to become immediately or soon indebted, this may be a fraud against them, which they may have the right to attack ; but that is a special case, not this one."

The court submitted to the jury the whole question as to the good or bad faith of Johnson in making the transfer. Instructions nineteen and twenty are as follows :

"19. The jury are further instructed that, except as hereinafter explained, a person may make a conveyance of property which is fraudulent and invalid as to existing creditors, but such conveyance, with the exception to be stated, will stand as against subsequent creditors who had no interest in the property at the time of the conveyance.

"20. But the exception referred to is as follows : If a person is engaged in business or about to embark in a business of a hazardous character or one which is likely to result in loss, and if such person, in contemplation of this fact and for the purpose of defrauding future creditors or avoiding payment of debts which he is intending to make, puts his property out of his hands to that end, then it makes no difference whether a creditor who complains of such a transaction was an existing or subsequent creditor."

Under the facts of the case, these instructions were proper. The jury must have drawn the inference that Johnson intended to take no risk, in respect to his in-

JOHNSON v. JONES. 761

Nov. 16, 1897.        Opinion.    Milton, J.            C. Div.

dividual property, in connection with the grocery business. It seems that Constant had largely the management of the store. It was certainly not a very prosperous concern. Johnson's explanation of the transfer to his wife was not calculated to convince the minds of the jurors as to his good faith. His firm then owed largely and continued to buy goods on credit. From all the facts, the jury concluded that he designed to place his individual property beyond the reach of the firm's future creditors in the event of the firm's failure. Their verdict was approved by the trial court. We do not find sufficient reason for disturbing it.

It is earnestly contended that C. P. Johnson was not a partner with A. P. Johnson in the cattle business at the time of the levy or prior thereto. The petition, the replevin affidavit and the bond, stated that A. P. Johnson and Nannie J. Johnson were the owners of the live stock seized. The evidence shows the business was done in the name of Johnson & Johnson, that A. P. and C. P. Johnson each put money into the firm account and received money therefrom, and that they kept the bank account in the firm name. There is evidence to the effect that A. P. Johnson stated to the officer who made the levy that C. P. Johnson owned a half interest in the cattle. This was disputed by A. P. Johnson in his testimony in rebuttal. He admitted saying that C. P. Johnson owned an interest.

4. *Partnership.*

As we view the evidence, the question as to the existence of a partnership between A. P. and C. P. Johnson was for the jury to determine. The verdict shows the jury believed a partnership was proven. Very interesting phases of partnership questions are presented in the briefs of counsel, but we think it un-

necessary to consider the matter any further, as the verdict, based on conflicting evidence and approved by the trial court, is conclusive in a reviewing court.

The record discloses no material errors in the trial of the cause. The judgment of the District Court is affirmed.